IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| $219,970.00 IN UNITED STATES | : | CIVIL ACTION NO. |
| CURRENCY, | : | 1:21-cv-01844-LMM |
| | : | |
| | : | |
| | : | |
| Defendants. | : | |

## ORDER

This matter is before the Court on Claimant Kevin Hartley's Motion for Summary Judgment [65], Plaintiff United States of America's Motion for Summary Judgment [71], and Claimant Kevin Hartley's Motion to Strike [76]. After due consideration, the Court enters the following Order:

## I. BACKGROUND

This civil forfeiture action concerns the seizure of $219,970.00 in U.S. currency, found in a bag in the back of a car driven by Claimant Kevin Hartley.

The seizure occurred amidst a wide-scale drug enforcement investigation. The following abridged background is relevant to the parties' claims.[1]

## A. The Underlying Investigation

In August 2017, agents with the Atlanta Office of the Drug Enforcement Administration initiated an investigation of a large-scale drug and money laundering organization focusing on Tommie Walker and his various alleged co-conspirators. Dkt. No. [80-10] ¶ 1. In December 2018, Walker pled guilty to conspiracy to possess with intent to distribute five kilograms or more of cocaine. Id. ¶ 3. During the investigation, Task Force Officer Michael Caillouet learned that Walker used a warehouse located at 609 Cordell Drive, Atlanta, Georgia, to offload kilogram quantities of cocaine from tractor-trailers. Id. ¶ 4.

## B. Warehouse Surveillance

On or about February 20, 2018, Investigator Brian Everett sent Officer Caillouet a photo of a tractor-trailer at the warehouse. Officer Caillouet searched the area for the vehicle and found the tractor-trailer at a truck stop close to the warehouse, and Drug Enforcement Administration agents established surveillance on the vehicle and obtained the license plate's tag numbers. Id. ¶¶ 6–8. Officers observed the tractor-trailer's driver, later identified as Ruben Peters, and a passenger exit the vehicle. Id. ¶ 9. Approximately thirty minutes later, both

---

[1] The facts in this section are undisputed unless otherwise indicated. As the Court explains more fully below, many facts from the Government's statement of material facts must be deemed admitted because Mr. Hartley has not meaningfully contested them. See Dkt. No. [80-10].

individuals exited the tractor-trailer again and entered a 2014 white Ford Taurus occupied by Mr. Hartley and Gregory Henton. Id. The vehicle, registered to and driven by Mr. Hartley, left the truck stop and then later returned to it an hour and a half later; Mr. Peters and his passenger then exited Mr. Hartley's vehicle, returned to the tractor-trailer, and left the truck stop. Id. ¶¶ 11–13. Officers followed Peters from the truck stop to 3001 Old Concord Road, Smyrna, Georgia. Id, ¶ 14.

Shortly thereafter, the white Ford Taurus, driven by Mr. Hartley, arrived at the same location. Id. ¶ 15. Mr. Hartley and his passenger removed a grinder and welder from the trunk of Mr. Hartley's vehicle, which Mr. Peters used on the rear of the trailer. Id. ¶¶ 16–18. Mr. Hartley and his passenger left the residence in the white Ford Taurus, and Mr. Peters left in the tractor-trailer. Id. ¶ 19.

### C. Traffic Stop of Kevin Hartley's Vehicle

Later that same day, Georgia State Patrol Trooper Jordan Ennis, while patrolling in Cobb County, received notice to be on the lookout for a white Ford Taurus that was the target of surveillance in an ongoing investigation involving possible narcotics distribution activity. Id. ¶ 21. Trooper Ennis states that he observed a white Ford Taurus fail to maintain its lane. Id. ¶ 22. Trooper Ennis performed a traffic stop of the vehicle which driven by Mr. Hartley with passenger Gregory Henton. Id. ¶ 23. Trooper Ennis requested Mr. Hartley's driver's license and insurance and ran a law enforcement check of the license. Id. ¶ 26. Trooper Ennis, believing Mr. Hartley's license to be suspended, returned to

the vehicle, and asked Mr. Hartley to step to the rear of the Ford Taurus.[2] Id. ¶ 27. Mr. Hartley denied that his license was suspended and stated that he had previously had an issue in Florida that was since resolved, but he was placed in handcuffs and secured in a Georgia State Patrol vehicle. Id. ¶¶ 28, 30.

### D. Search and Seizure of Defendant Currency

After removing the occupants from the vehicle, Trooper Ennis conducted an inventory search.[3] Id. 31–32. Prior to conducting the inventory search however, Trooper Ennis observed a large bag in the backseat of Mr. Hartley's vehicle. Dkt. No. [71-16] at 65. The black duffel bag contained duct tape-wrapped packages that Mr. Hartley told Trooper Ennis were money and not drugs.[4] Dkt. No. [80-10] ¶¶ 33–35. Trooper Ennis deployed his K-9 certified to alert to marijuana, cocaine, methamphetamine, heroin, and ecstasy on Mr. Hartley's vehicle. Trooper Ennis attested that the K-9 gave a positive alert to the odor of narcotics on the open bag of currency, though Mr. Hartley disputes that fact. Id. ¶ 37. Mr. Hartley was given a citation for driving without a license and released to

---

[2] Mr. Hartley's position is that his license was not suspended. However, he does not dispute whether Trooper Ennis told him that his license was suspended or otherwise credibly challenge whether Trooper Ennis believed that his license was suspended. Dkt. No. [71-15] at 63–64.

[3] Mr. Hartley challenges the legality of the inventory search, but he does not dispute that an inventory search occurred. Dkt. No. [80-10] ¶¶ 31–32.

[4] While Mr. Hartley asserts that another open bag in the car (a garbage bag) did not contain duct tape-wrapped packages, he does not dispute the contents of the duffel bag.

his sister. Id. ¶ 40. Trooper Ennis seized the eighteen bundles of currency

removed from the duffel bag and provided Mr. Hartley with a receipt. Id. ¶¶ 39,

41.

### E. Events Following the Seizure

The following day, February 21, 2018, law enforcement officers intercepted

Mr. Peters' tractor-trailer at the 3001 Concord Road location. Officers seized

thirteen kilograms of cocaine in a trap located in the area on the trailer where Mr.

Peters had been observed welding with the tools Mr. Hartley and Mr. Henton

gave him.[5] Id. ¶¶ 17, 42. Mr. Peters later pled guilty to possession with intent to

distribute five or more kilograms of cocaine in violation of 21 U.S.C § 841(a)(1)

based on the conduct of February 21, 2018.[6] Id. ¶ 43.

### F. Procedural History

The Government initiated this *in rem* action by filing its Verified

Complaint for Forfeiture for $219,970.00 pursuant to 21 U.S.C. § 881(a)(6) and

18 U.S.C § 981(a)(1)(C). Dkt. No. [1] ¶ 1. Dkt. No. [1]. Claimant Kevin Hartley

---

[5] These facts concerning the arrest of Mr. Peters and the discovery of cocaine in
his tractor-trailer were set forth in Mr. Caillouet's affidavit. Mr. Hartley
challenges the admissibility of these facts on the basis that Mr. Caillouet lacks
personal knowledge of them, given that Mr. Caillouet was not present at the
arrest of Mr. Peters or the discovery of the cocaine. Dkt. No. [80-10] ¶ 42.
However, the Court overrules Mr. Hartley's objection because it finds that Mr.
Caillouet laid sufficient foundation for his testimony by describing his role in the
investigative task force. Fed. R. Ev. 602.

[6] Mr. Hartley argues that this fact is immaterial, but the Court disagrees. Dkt. No.
[80-10] ¶ 43.

asserted ownership interests in Defendant Currency.[7] Dkt. No. [12]. The Government also sent a Notice of Filing Complaint for Forfeiture to Mr. Hartley, who filed his Answer. [8] Dkt. Nos. [7, 9, 14]. The parties then engaged in the discovery process and received several extensions, both for the length of the discovery period and the deadline for filing dispositive motions.

Mr. Hartley and the Government have now both moved for summary judgment. Dkt. Nos. [70, 71]. Mr. Hartley also moves to strike exhibits and affidavits attached to the Government's motion. Dkt. No. [76-1].

## II.   MOTION TO STRIKE

The Court will first address Mr. Hartley's Motion to Strike Exhibits and Affidavits Attached to Plaintiff's Motion for Summary Judgment, Dkt. No. [76-1]. Mr. Hartley challenges the admissibility of several of Plaintiff's exhibits, each of which the Court will address in turn.

### A. "Expert" Affidavits

First, Mr. Hartley argues that Plaintiff submitted untimely expert affidavits of Michael Caillouet (a Task Force Officer on the underlying drug investigation) and Jordan Ennis (a Georgia State Trooper who conducted the traffic stop). Mr. Hartley contends that the Government failed to follow the requirements detailed

---

[7] Mr. Hartley's wife, Yolima Hartley, also asserted ownership interests before later withdrawing her claim. Dkt. Nos. [13, 57].

[8] Mr. Hartley was originally represented but his counsel withdrew. Dkt. Nos. [22]; [26]. Mr. Hartley now asserts ownership interests on his own behalf and is proceeding *pro se*. Dkt. No. [27].

in Federal Rules of Civil Procedure 16, 26, and 37 as well as the Court's scheduling order. Mr. Hartley asks the Court to exercise its discretion to exclude the two witnesses' testimony entirely because he argues that the Government lacked substantial justification for its failure to timely disclose its expert affidavits. Mr. Hartley also points out that the Government did not petition the Court to extend the deadline for expert reports and states that he was prejudiced by the untimely expert affidavits.

The Government states that these two affidavits are not offered as expert affidavits and that the heightened requirements applicable to expert witnesses do not apply. The Government explains that both affidavits describe the witnesses' factual experience with the case and fall within the realm of permissible lay opinion testimony.

The Court agrees with the Government that the two affidavits of Officer Caillouet and Trooper Ennis are not expert affidavits and therefore are not subject to the heightened requirements for expert testimony. Officer Caillouet's affidavit provides information about the drug enforcement task force that was investigating drug trafficking in the area. Trooper Ennis's affidavit details the traffic stop that resulted in the seizure of Defendant Currency. Dkt. No. [77-13]. A lay witness can offer opinion testimony if it is: "(a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." Fed. R. Ev. 701. The

Eleventh Circuit has permitted law enforcement officers' opinion testimony when it is "rationally based on" their training and professional experience, rather than scientific, technical, or specialized knowledge. See, e.g., United States v. McLellan, 958 F.3d 1110, 1113–14 (11th Cir. 2020) (permitting officer's lay opinion testimony about connection between guns and drug activity); United States v. Williams, 865 F.3d 1328, 1341–42 (11th Cir. 2017) (permitting Coast Guard officer's lay opinion testimony about appearance and size of packages and connection to cocaine trafficking). The Court finds that the two witnesses' testimony here is similarly permissible as lay opinion testimony, as each officer's testimony was rationally based on their professional experience and did not delve into expert witness territory. Accordingly, the Court finds that these two affidavits have not run afoul of the expert disclosure requirements in Rule 16, Rule 26, Rule 37, or the Court's scheduling order and will not be struck on that basis.

**B. Seasonableness of Exhibits**

Mr. Hartley next asks the Court to strike as untimely Exhibits C-1, C-2, D, E, F-1, F-2, and G as well as the affidavits of Officer Caillouet and Trooper Ennis. Mr. Hartley argues that Plaintiff failed to adequately disclose those exhibits and their contents in violation of Rule 26(a). Mr. Hartley also argues that the Government violated its duty to seasonably amend its discovery responses to include the exhibits at issue, despite the Court's extension of the deadlines for the discovery period and the filing of dispositive motions. Mr. Hartley argues further

that the Government cannot show substantial justification for the Court to permit the untimely exhibits as would be required under Rule 37(c). Mr. Hartley claims that he is prejudiced by the late disclosure in conjunction with the Government's summary judgment motion.

In response, the Government begins by explaining that *in rem* forfeiture actions arising under federal statutes like this one are exempt from the initial disclosure requirements per Rule 26(a)(1)(B). The Government also points out that the duty to amend discovery responses under Rule 26(e) requires disclosure of "[a] party who has made a disclosure under Rule 26(a)." Dkt. No. [78] at 2 (citing Fed. R. Civ. P. 26(e)).

As to the listed exhibits, which are all photographs, the Government asserts that these exhibits were produced during discovery and sent to Mr. Hartley through a disc copy on August 18, 2022. The Government submitted an email sent to Mr. Hartley notifying him he would receive a package with a disc containing photographs, the incident report, and a video from the Georgia Department of Public Safety. Dkt. No. [78-1] at 2. The Government also submitted a FedEx receipt showing that a package was received by Mr. Hartley on August 19, 2022. Dkt. No. [78-1] at 3. Mr. Hartley did not file a reply to the Government's response.

As to the two affidavits, the Government argues that Mr. Hartley was made aware of the testimony in both through other documents disclosed in the discovery process. The Government contends that the information contained in

Trooper Ennis's affidavit was substantially similar to the information contained in the Incident Report prepared by Trooper Ennis detailing the traffic stop. On a similar note, the Government argues that the surveillance outlined in Officer Caillouet's affidavit was detailed in the Drug Enforcement Action investigation report, the DEA-6, prepared by Officer Caillouet. The Government points out that Mr. Hartley attached both the Incident Report and the DEA-6 to his amended motion for summary judgment and that he never sought to depose or interview either witness. Finally, the Government argues that the Complaint in this case gave Mr. Hartley fair notice that Defendant Currency was seized in connection with surveillance of Mr. Peters as well as its account of the facts surrounding the traffic stop.

The Court finds that the Government's exhibits and affidavits at issue should not be struck as untimely. The Government is correct in pointing out that, to the extent Mr. Hartley invokes the initial disclosure requirements in Rule 26(a), actions like this one are specifically exempt from those requirements because this is an *in rem* forfeiture action arising out of a federal statute. Fed. R. Civ. P. 26(a)(1)(B)(ii). The Court is also persuaded that the Government did produce the photographs at issue, given the Government's exhibits containing an email and tracking information concerning a package sent to Mr. Hartley said to include those exhibits. While Mr. Hartley was not obligated to file a reply, the Court finds this evidence to be uncontroverted and that it reflects that the Government did produce the documents during the discovery process.

Additionally, the Court agrees that the information contained in the affidavits was not unseasonable because Mr. Hartley had notice of the testimony through other exhibits produced in the case. The Court also agrees with the Government that the Complaint itself gave the name of Officer Caillouet, described his involvement with the surveillance, explained that the task force was investigating Mr. Peters, gave the name of Trooper Ennis, and substantially described his encounter with Mr. Hartley and his vehicle during the traffic stop. See Dkt. No. [1]. Accordingly, the Court finds that Mr. Hartley has not shown a valid basis for striking these exhibits and affidavits as unseasonable because he was made aware of their contents and therefore not prejudiced.

### C. Electronic Signature Requirement

Third, Mr. Hartley argues that the affidavits of Officer Caillouet and Trooper Ennis must be struck because they were electronically signed rather than "wet signed." Dkt. No. [76-1] at 13–14. Mr. Hartley argues that the affidavits do not satisfy the "author's signature" requirement of 28 U.S.C. § 1746, which apples to unsworn declarations.

At the summary judgment stage, "[u]nsworn statements may not be considered by a district court in evaluating a motion for summary judgment." Roy v. Ivy, 53 F.4th 1338, 1347 (11th Cir. 2022). But "[a] statutory exception to this rule exists under 28 U.S.C. § 1746, which permits unsworn declarations to substitute for a sworn affidavit or sworn declaration for purposes of summary judgment if certain statutory requirements are met." Id. Under the statute,

unsworn declarations may substitute for a sworn affidavit with "like force and effect" where the unsworn declaration is "in substantially the following form: . . . 'I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct. Executed on (date). (Signature).'" 28 U.S.C. § 1746(2). The Eleventh Circuit has held that the declarant must "sign the document," but has not prescribed a specific type of signature. Roy, 53 F.4th at 1548. Additionally, the Court notes that several courts in this District have "declined to strike affidavits because they contained an electronic signature." Middlebrooks v. Equifax, Inc., No. 1:20-CV-1825-SCJ-JSA, 2023 WL 2876429, at *6 (N.D. Ga. Mar. 14, 2023) (citing CFPB v. Univ. Debt & Payment Sols. LLC, 1:15-CV-0859-RWS, 2019 WL 1295004, at *11 (N.D. Ga. Mar. 21, 2019)).

The affidavits of both Officer Caillouet and Trooper Ennis are signed, dated, and contain statements, "[p]ursuant to 28 U.S.C. § 1746," declaring "under penalty of perjury, that the foregoing is true and correct." Dkt. Nos. [71-14] at 6; [71-15] at 6. Having reviewed them, the Court finds that both affidavits comply with the statutory requirements that the declarant "must (1) date and sign the document, and (2) subscribe its content as 'true,' (3) under 'penalty of perjury,' (4) in substantially" the language prescribed by 28 U.S.C. § 1746(2). Roy, 53 F.4th at 1348. The Court also notes that there is no reason to doubt the authenticity of either document.

Having considered all of Mr. Hartley's arguments, the Court finds that the motion to strike must be denied. The Court will consider the

exhibits and affidavits in reference to both parties' motions for summary judgment.

## III.   MOTIONS FOR SUMMARY JUDGMENT

Mr. Hartley and the Government have both moved for summary judgment, asserting their respective entitlement to the Defendant Currency. Dkt. Nos. [70,71]. The Court now jointly considers both Motions.

### a.  Legal Standard

Federal Rule of Civil Procedure 56 provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

A factual dispute is genuine if the evidence would allow a reasonable jury to find for the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is "material" if it is "a legal element of the claim under the applicable substantive law which might affect the outcome of the case." Allen v. Tyson Foods, Inc., 121 F.3d 642, 646 (11th Cir. 1997).

The moving party bears the initial burden of showing the Court, by reference to materials in the record, that there is no genuine dispute as to any material fact that should be decided at trial. Hickson Corp. v. N. Crossarm Co., 357 F.3d 1256, 1260 (11th Cir. 2004) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). The moving party's burden is discharged merely by "'showing'—that is, pointing out to the district court—that there is an absence of evidence to

support [an essential element of] the nonmoving party's case." Celotex Corp., 477 U.S. at 325. In determining whether the moving party has met this burden, the district court must view the evidence and all factual inferences in the light most favorable to the party opposing the motion. Johnson v. Clifton, 74 F.3d 1087, 1090 (11th Cir. 1996).

Once the moving party has adequately supported its motion, the non-movant then has the burden of showing that summary judgment is improper by coming forward with specific facts showing a genuine dispute. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). There is no "genuine [dispute] for trial" when the record as a whole could not lead a rational trier of fact to find for the nonmoving party. Id. (citations omitted). All reasonable doubts, however, are resolved in the favor of the non-movant. Fitzpatrick v. City of Atlanta, 2 F.3d 1112, 1115 (11th Cir. 1993).

The same standard of review applies to cross-motions for summary judgment, but the Court must determine whether any of the parties deserves judgment as a matter of law on the undisputed facts. S. Pilot Ins. Co. v. CECS, Inc., 52 F. Supp. 3d 1240, 1242–43 (N.D. Ga. 2014) (citing Am. Bankers Ins. Grp. v. United States, 408 F.3d 1328, 1331 (11th Cir. 2005)). Each motion must be considered "on its own merits, [with] all reasonable inferences [resolved] against the party whose motion is under consideration." Id. at 1243.

### b. Facts Deemed Admitted

Before discussing the substance of the parties' summary judgment motions, the Court will briefly address what facts are considered "undisputed" at this stage. Under the Local Rules of this Court, parties moving for summary judgment are required to submit a statement of undisputed material fact with citations to record evidence. N.D. Ga. L.R. 56.1(B)(1). A party responding to a motion for summary judgment must include a response to the movant's statement of undisputed facts. N.D. Ga. L.R. 56.1(B)(2). The Court will deem each of the movant's facts admitted unless the opposing party refutes the fact with citations to evidence, states a valid objection to the fact's admissibility, or points out that the movant's fact is immaterial or unsupported by the cited evidence. Id.

Mr. Hartley did not respond to the Government's statement of material facts filed with its motion, but he did respond to the Government's statement of additional material facts that it filed in response to Mr. Hartley's motion. Given Mr. Hartley's *pro se* status and in the interest of resolving the case on the merits, the Court will construe Mr. Hartley's response to the statement of additional material facts as a response to the Government's initial statement of material facts where applicable. Even granting Mr. Hartley that leniency, the response he did file failed to effectively dispute a great majority of the Government's stated facts, leading the Court to find them to be deemed admitted. Most significantly, Mr. Hartley "disputed" a great number of the Government's facts on the sole basis that they relied on the affidavits of Officer Caillouet and Trooper Ennis,

which were not "wet signed." Dkt. Nos. [80-10]. As the Court has already explained, these affidavits are admissible at this stage despite being electronically signed. Accordingly, for those facts that are only listed as "disputed" with the reason given being that the affidavits were not "wet signed," the Court deems those facts admitted. The Court has also addressed other specific facts above and below that are deemed admitted and resolves other objections raised by Mr. Hartley where appropriate.

### c. Legality of Search and Seizure

Mr. Hartley's summary judgment motion raises a fundamental challenge to the Government's claim for civil forfeiture by arguing that it has no legal right to introduce evidence of Defendant Currency because it was illegally seized. Mr. Hartley argues that the exclusionary rule applies and forbids the Government from introducing any evidence from the stop or seizure. Mr. Hartley challenges the legality of the search of his vehicle by Trooper Ennis during the traffic stop that led to the seizure of Defendant Currency for two main reasons. Dkt. No. [80] at 9. First, he argues that, despite Trooper Ennis's claim, his license was not in fact suspended at the time of the traffic stop. Second, he argues that Trooper Ennis failed to follow usual police procedures as his vehicle was not towed and his sister was allowed to drive the vehicle home.

In response, the Government argues that the two issues raised by Mr. Hartley concerning his license and the release of his vehicle are not dispositive of the issues. The Government argues that Trooper Ennis had a reasonable

articulable suspicion to stop Mr. Hartley when he observed Mr. Hartley's failure to maintain his lane. The issue with Mr. Hartley's license arose after Mr. Hartley was stopped and Trooper Ennis checked his identification. Next, the Government argues that Trooper Ennis was entitled to search the vehicle under two different theories. The Government argues that the Trooper Ennis had probable cause to search the vehicle because he observed an open bag containing vacuum-sealed wrapping and duct tape which, based on his law enforcement experience, he knew to be common in the packaging of narcotics. Alternatively, the Government argues that the search was a valid inventory search.

The Court first considers the legality of the traffic stop. The Fourth Amendment protects against "unreasonable searches and seizures" including during the temporary detention of individuals during a traffic stop. Whren v. United States, 517 U.S. 806, 809–10 (1996). The decision to stop an automobile is reasonable when "the police have probable cause to believe that a traffic violation has occurred." Id. at 810. Moreover, the subjective intentions of the police officer play no role in "ordinary, probable-cause Fourth Amendment analysis." Id. at 813. Therefore, the constitutional reasonableness of traffic stops does not depend on the "actual motivations of the individual officers involved." Id. Further, Mr. Hartley is correct in arguing that only legally obtained evidence may be used to meet the Government's burden under the civil forfeiture standard. See One 1958 Plymouth Sedan v. Com. of Pa., 380 U.S. 693, 702 (1965).

17

While Mr. Hartley argues that the stop was illegal because his license was not suspended, Trooper Ennis was entitled to stop Mr. Hartley based on his observation of Mr. Hartley's failure to maintain his lane. Mr. Hartley has not disputed that Trooper Ennis observed the white Ford Taurus fail to maintain its lane. Dkt. No. [80-10] ¶ 22. Trooper Ennis's undisputed testimony that he observed the traffic violation is more than enough to prove that he had a reasonable articulable suspicion for the stop. Dkt. No. [71-15] ¶ 3; Wren, 517 U.S. at 810. To the extent that Mr. Hartley attempts to challenge the subjective intentions of Trooper Ennis, such inquiry is irrelevant to the legality of the temporary detention. Wren, 517 U.S. at 813. Because Trooper Ennis had probable cause to believe that a traffic violation occurred, the initial traffic stop was constitutional. Id. at 810.

Having found that the initial stop was lawful, the Court's analysis turns to the seizure of the evidence itself. Horton v. California, 496 U.S. 128, 136 (1990). The Court begins with the Government's alternative argument that the search was a proper inventory search. Inventory searches are a "well-defined exception to the warrant requirement of the Fourth Amendment." Colorado v. Bertine, 479 U.S. 367, 371 (1987).

The Government correctly argues that Trooper Ennis was authorized to conduct an inventory search when he determined that Mr. Hartley and his passenger lacked valid driver's licenses, that no one else was on scene to drive the vehicle away, and that the car would likely be towed. Dkt. Nos. [84] at 10; [77] at

15. Mr. Hartley has contested whether his license was actually suspended, but he has not disputed the evidence and testimony from Trooper Ennis that a search of Mr. Hartley's license *showed* it was suspended. Once Trooper Ennis determined that Mr. Hartley's license was suspended, he was authorized to conduct an inventory search of Mr. Hartley's vehicle without a warrant. Bertine, 479 U.S. at 371. Reasonable police regulations "relating to inventory procedures administered in good faith" are enough to satisfy the Fourth Amendment. Id. at 374. As with the original stop, the subjective intent of the office as to the inventory search is irrelevant as "the mere expectation of uncovering evidence will not vitiate an otherwise valid inventory search." United States v. Bosby, 675 F.2d 1174, 1179 (11th Cir. 1982).[9] Trooper Ennis' subjective intent to uncover evidence does not affect the legality of the search under these facts, and Mr. Hartley has brought forth no evidence to show bad faith.

Mr. Hartley seems to challenge the reasonableness of the police procedures by pointing out that he was not arrested for driving without a license and that he was not ultimately prosecuted for failure to maintain his lane. The Court finds that this argument is without merit because it does not disprove whether Trooper

---

[9] The Court declines to reach the Government's argument that the seizure was justified because Trooper Ennis had probable cause to search the vehicle because he could see a bag containing money in the back of the car. Because the Court bases its decision on the inventory search, Mr. Hartley's arguments about the position of the bag, the visibility of the money, the K-9 positive alert, the accuracy of the Government's photograph exhibits and when they were taken, and the fact that no drugs were ultimately recovered are all irrelevant to the Court's ruling on this point.

Ennis lawfully stopped the vehicle and conducted the inventory search at the time

he did those actions. While Mr. Hartley suggests that the lack of follow-up on his

failure to maintain lane or license issues is suspicious, the Court finds these

issues do not raise a genuine issue of material fact as to the constitutionality of

the search and seizure. Because Trooper Ennis was authorized to search and seize

Defendant Currency, the Court finds that there is no genuine dispute as to the

legality of the seizure of Defendant Currency or the suppression of evidence from

the stop or search.

### d.  Forfeiture Framework

Both the Government and Mr. Hartley move for summary judgment,

asking the Court to decide whether Defendant Currency can be subject to civil

forfeiture as a matter of law. In a civil forfeiture action, the Government must

show by a preponderance of the evidence that the property at issue is subject to

forfeiture. 18 U.S.C. § 983(c)(1). Here, the Government claims Defendant

Currency is subject to forfeiture under 18 U.S.C. § 981(a)(1)(C) and 21 U.S.C. §

881(a)(6). Dkt. No. [71-1] at 6. Both provisions render property forfeitable only if

there is an underlying violation of law to which the property can be connected as

an "instrument" or as "proceeds." The Government may use evidence gathered

after the filing of a forfeiture complaint to meet its burden, id. § 983(c)(2),

including "both circumstantial evidence and hearsay." United States v.

$291,828.00 in U.S. Currency, 536 F.3d 1234, 1237 (11th Cir. 2008) (quoting

United States v. Four Parcels of Real Prop., 941 F.2d 1428, 1440 (11th Cir. 1991)).

Here, the Government alleges that Defendant Currency was money furnished or intended to be furnished in exchange for a controlled substance or was proceeds of the distribution of narcotic drugs in violation of 21 U.S.C. § 841(a)(1). Id. at 6–7, 9–12. Both civil forfeiture statutes at issue, 18 U.S.C. § 981(a)(1)(C) and 21 U.S.C. § 881(a)(6), permit forfeiture of property connected to certain offenses outlined in 21 U.S.C. § 841(a). Section 981(a)(1)(C) provides, in relevant part, that property is forfeitable when the property constitutes proceeds traceable to "specified unlawful activity," as defined in 18 U.S.C. § 1956(c)(7). Section 1956(c)(7) defines that term by reference to 18 U.S.C. § 1961(1), which includes "dealing in a controlled substance or listed chemical (as defined in section 102 of the Controlled Substances Act) punishable under any law of the United States . . . ."[10] Likewise, 21 U.S.C. § 881(a)(6) permits forfeiture of money or things of value furnished or intended to be furnished "in exchange for a controlled substance or listed chemical in violation of this subchapter," and proceeds traceable to such an exchange.

The framework for civil forfeiture proceedings under 21 U.S.C. § 881(a)(6) has been clearly defined by the Eleventh Circuit:

> The burdens of production and persuasion in cases brought pursuant to this statute are well settled. Initially, the claimant must establish standing as owner of the contested property. The government then bears the burden of establishing probable cause for the belief that the property to be forfeited is substantially connected to drug dealing. If the probable cause hurdle is overcome, the claimant has the ultimate

---

[10] Cocaine is a Schedule II controlled substance. See 21 U.S.C. § 812.

burden of proving by a preponderance of the evidence that the property derived from a legitimate source.

United States v. $121,100.00 in U.S. Currency, 999 F.2d 1503, 1505 (11th Cir. 1993) (citations omitted). Mr. Hartley's standing in this case is not disputed. The Court will consider the parties' arguments with respect to the remainder of the forfeiture standard.

### 1. Probable Cause Inquiry

To demonstrate probable cause under the civil forfeiture standard, the Government must present evidence "furnishing a 'reasonable ground for belief' that a substantial connection exists" between Defendant Currency and the illegal exchange of narcotics. Id. at 1506 (quoting United States v. Real Property in Greene & Tuscaloosa Counties, 941 F.2d 1428, 1440 (11th Cir. 1991) (en banc)). However, the probable cause inquiry for forfeiture is a "flexible one" and the Court may look to the "totality of the circumstances." Id. (citing Illinois v. Gates, 462, U.S. 213, 230 (1983).

In evaluating the totality of the circumstances, the Government notably is not required to show a "relationship between the property and a particular drug transaction—only that the property was related to some illegal drug transaction." United States v. $242,484.00, 389 F.3d 1149, 1160 (11th Cir. 2004). The fact that a significant amount of currency is seized at once is insufficient to demonstrate a connection to illegal drugs, but it is "highly probative of a connection to some illegal activity." $121,100.00 in U.S. Currency, 999 F.2d at 1507. The Court must

consider whether the Government has met its burden of showing that a "reasonable person could believe that such illegal activity was in fact the exchange of a controlled substance." Id.

The Government argues that it can meet its probable cause burden through its evidence of the following facts: Mr. Hartley's vehicle was under surveillance as part of a broader drug trafficking investigation, Mr. Hartley was seen with Mr. Peters prior to the traffic stop, Mr. Peters's convicted conduct involved possession of a large quantity of drugs, and that the Defendant Currency seized from Mr. Hartley's car is a large amount of currency and its packaging suggests its connection to the drug trade. The Government also argues that there is no plausible, evidence-supported connection between the large amount of currency in his possession and Mr. Hartley's legitimate means of income.

The Court finds that the Government has met its initial burden of establishing probable cause that Defendant Currency is connected to drug distribution. The Government has brought forth evidence of the circumstances preceding and following the traffic stop. During the investigation of a large-scale drug and money laundering organization, Mr. Hartley was seen with Ruben Peters who, earlier that day, was at a warehouse affiliated with drug distribution using tractor-trailers.[11] Dkt. No. [80-10] ¶¶ 1–11. Mr. Hartley was later seen

---

[11] Mr. Hartley challenges the admissibility of surveillance photos and states that the Government did not submit its full surveillance video to the record. Dkt. No. [80] at 6. However, regardless of the surveillance photos, Mr. Hartley has not brought forth any evidence to establish a genuine dispute as to the events at 3001

giving Mr. Peters tools used to weld and grind the rear of a tractor-trailer. Id. ¶¶ 16–17. Trooper Ennis was notified that Mr. Hartley's vehicle was the target of surveillance in an ongoing investigation involving possible narcotics distribution. Id. ¶ 21. Trooper Ennis testified that the money was in eighteen duct-tape wrapped bundles in a manner consistent with drug trafficking proceeds. The following day, law enforcement officers intercepted Mr. Peters's tractor-trailer and seized 13 kilograms of cocaine in a trap located in the area on the trailer where Peters was observed welding. Id. ¶ 42. The large amount of currency and lack of evidence that Mr. Hartley accrued it through legitimate means is "highly probative of a connection to some illegal activity" but does not alone establish probable cause. $121,100.00 in U.S. Currency, 999 F.2d at 1507. The Court is also persuaded by evidence that Mr. Hartley's income in the two years prior came from "odd jobs to make ends meet," and that Mr. Hartley testified it was a "rough" and "hard" time for him. Dkt. No. [71-16] at 40, 43.

Given the undisputed evidence, the Court finds that the Government has met its burden of establishing probable cause that Defendant Currency is

---

Old Concord Road provided by other testimony—including the affidavit of Officer Caillouet. Officer Caillouet detailed the investigation and its conclusions, which tied Mr. Hartley to Mr. Peters and the tractor-trailers at that location. Dkt. No. [80-10] ¶¶ 14–15, 17–19. For that reason, even if there were no photographs in the record, the Court may rely on Officer Caillouet's undisputed testimony on this subject. Mr. Hartley's own affidavit does not dispute these facts his connection to Mr. Peters and the events described in Officer Caillouet's affidavit. See Dkt. No. [70-1] at 39–40.

connected to some illegal activity.[12] Under the totality of the circumstances, a "reasonable person could believe that such illegal activity was in fact the exchange of a controlled substance" because of Peters' convicted conduct and Mr. Hartley's interactions with him and the tractor-trailer the day before. $121,100.00 in U.S. Currency, 999 F.2d at 1507.

### 2. Claimant's Burden

After the Government establishes probable cause, the burden shifts to the claimant to prove, by the preponderance of the evidence, that Defendant Currency is not subject to forfeiture. United States v. Cleckler, 270 F.3d 1331, 1334 (11th Cir. 2001). The claimant may meet this burden by rebutting the Government's evidence or demonstrating that the claimant is an innocent owner. Id.

### A. Innocent Owner

Under 18 U.S.C. § 983(d)(2)(A) an "innocent owner" is one who did not know of the conduct giving rise to forfeiture or, upon learning of the conduct, did all that reasonably could be expected under the circumstances to terminate such use of the property. Even construing his pleadings generously given his status as a *pro se* litigant, the Court finds that Mr. Hartley has not colorably raised the

---

[12] The Government also points to the fact that the K-9 positively alerted to the scent of drugs on the bag. While Mr. Hartley disputes whether the K-9 did alert to the bag, the Court finds that immaterial to its conclusion--even assuming that the dog did not alert to the odor of drugs, the Government has carried its burden of showing probable cause through other undisputed evidence.

defense that he is an innocent owner. Mr. Hartley has failed to show that there is any evidence, much less a preponderance of the evidence, that suggests that Defendant Currency is derived from a legitimate source and not drugs. The only evidence Mr. Hartley has as to his legitimate income is that he performed "odd jobs to make ends meet." Dkt No [71-16] at 40. At his deposition, Mr. Hartley testified that he was not employed by any sort of company in 2018 and had been working as an "extra hand" doing whatever he could from 2016-2018. Dkt. No. [71-16] at 39–41. Mr. Hartley's tax returns for himself and his wife, which he testified accurately represent his income, also showed a range of income between $50,000 and $60,000 for the couple in the years 2016, 2017, and 2018. Id. at 43–46.

Mr. Hartley responds to the Government's statement of additional material facts concerning his income by saying that he is self-employed and that he did "whatever work came in to take care of his day-to-day expenses" and was doing "supplementary jobs to make ends meet in between contracts." Dkt. No. [80-10] ¶¶ 49–50. Putting aside that Mr. Hartley failed to appropriately cite support for these statements in the record, these assertions do not demonstrate that Mr. Hartley could possibly have a legitimate source of income resulting in such a large amount of bundled cash being in his possession at once. There is simply no evidence tying Defendant Currency to Mr. Hartley's legitimate means of income. As the Eleventh Circuit has held, "[t]he mere allegation of a highly unlikely legitimate source of income without some support to give the allegation

credibility cannot constitute an issue of material fact defeating summary judgment for forfeiture." United States v. Two Parcels of Real Prop. Located in Russell Cnty., Ala., 92 F.3d 1123, 1129 (11th Cir. 1996).

## B. Rebuttal of Government's Evidence

Because Mr. Hartley failed to effectively raise or create a fact issue as to any innocent owner defense, the Court must determine if Mr. Hartley has rebutted the Government's evidence to invalidate the Government's initial showing of probable cause. The Court has already considered and rejected a great deal of Mr. Hartley's arguments about evidence admissibility, which he makes repeatedly. The Court has found that the affidavit of Officer Caillouet is admissible and establishes a strong connection between Mr. Hartley, his white Ford Taurus, and Mr. Peters's convicted conduct of cocaine distribution. There is no possible jury question as to these issues given the Government's pre-traffic stop evidence about Mr. Hartley's and Mr. Peters's travel to sites connected with the trafficking of cocaine, as well as Mr. Peters arrest the following day and the discovery of large amounts of cocaine. It is also undisputed that Defendant Currency is an extremely large amount of currency that was packaged in a way that is consistent with the drug trade. The Court has also found that the Government can carry its burden without relying on the evidence most contested by Mr. Hartley, including the surveillance photos and the K-9 positive alert. The Court has also considered and rejected Mr. Hartley's arguments fully with respect to his legitimate income and finds that, as a matter of law, the Government has shown that Defendant

Currency did not come from Mr. Hartley's lawful income. Mr. Hartley's other arguments—like that he was not arrested, that he had no citation in court for failure to maintain lane, that his vehicle was not towed, or other arguments about the Tommie Walker investigation—are immaterial as they do not affect these central pieces of evidence that entitle the Government to summary judgment.

Having considered all of the parties' arguments and evidence, the Court finds that the Government has shown that, as a matter of law, Defendant Currency was involved in, or is proceeds of, drug transactions that violated 21 U.S.C. § 841(a)(1). Defendant Currency is therefore subject to forfeiture pursuant to 18 U.S.C. § 983(c)(1).

### e. Notice Requirement

Mr. Hartley challenges the Government's compliance with the notice requirements of 18 U.S.C § 983(a). Dkt. No. [80] at 18. Mr. Hartley questions the Government's procedure in providing notice and receiving extensions. Mr. Hartley argues based on the docket for the previously sealed proceeding that there are no "authenticated" court orders showing the Government received a lawful extension between May and August 2020.

The Government argues that it followed the statutory requirements for extending the notice period as prescribed under 18 U.S.C. § 983(a)(1)(B)-(D) and

complied with all requirements.[13] Specifically, the Government states that after
DEA Forfeiture Counsel granted a thirty-day extension under 18 U.S.C. §
983(a)(1)(D), and, after that, the Court granted numerous *ex parte* motions for
sixty-day extensions after making appropriate findings about their necessity. At
the conclusion of the Court's extension of the notice period, the Government
states it sent administrative notice to Mr. Hartley on December 30, 2020 and
posted notice on its official internet government forfeiture website between
January 11, 2021 and February 9, 2021. While acknowledging that the notice sent
directly to Mr. Hartley was returned as undeliverable, the Government notes that
Mr. Hartley did have actual notice of the forfeiture because he timely filed his
claim with the DEA to Defendant Currency on February 3, 2021. Dkt. No. [84] at
14–15.

     The Court agrees with the Government that the record shows no dispute of
material fact that it followed all applicable notice requirements. While Mr.
Hartley points out that the docket does not reflect the entries of two of the
extension orders that the Government represents were signed on May 1st and
July 1st 2020, the Court finds no evidence or irregularity or fraud. The

---

[13] The Government also argues that the exclusive remedy for challenging
nonjudicial forfeiture actions is 18 U.S.C. § 983(e) and that Mr. Hartley cannot
seek relief under that section because he received actual notice and filed a claim.
The Government argues that 18 U.S.C. § 983(e) deprives this Court of jurisdiction
to consider Mr. Hartley's arguments as to notice. However, based on the record
presently before it, the Government has not effectively argued that Mr. Hartley's
arguments should be construed as a motion to set aside forfeiture under § 983(e),
rather than simply an argument under § 983(a)(1)(F).

Government's counsel has made numerous affirmative representations to the Court that these orders were signed and entered within the time prescribed by the statute. The docket also reflects that several orders granting extensions were entered after those orders, demonstrating court findings that the extensions were lawful and warranted. There is no indication that the notice period lapsed. Separately, all evidence suggests that Mr. Hartley received actual notice and was able to pursue his claim.

### f. Unclean Hands

Mr. Hartley also argues that the notice issues and other misconduct by the Government entitle him to relief under the doctrine of "unclean hands."[14] The requirement of coming to court with "clean hands" is "rooted in the historical concept" of the Court exercising its equitable jurisdiction "as a vehicle for affirmatively enforcing the requirements of conscience and good faith." Precision Instrument Mfg. Co. v. Auto. Maint. Mach. Co., 324 U.S. 806, 814 (1945). As a protection against bad faith and misconduct, the Court has discretion to exercise equitable jurisdiction if the claimant's "failure to properly seek relief resulted from errors of procedure and form or the government's own misconduct." In re $67,470.00, 901 F.2d 1540, 1545 (11th Cir. 1990). However, the Court's "decision

---

[14] To the extent Mr. Hartley raises new arguments on this issue in his reply brief, those arguments are not properly before the Court. United States v. Whitesell, 314 F.3d 1251, 1256 (11th Cir. 2002); see also Fogade v. ENB Revocable Tr., 263 F.3d 1274, 1296 n.19 (11th Cir. 2001).

to invoke equitable jurisdiction is highly discretionary and must be exercised with

caution and restraint." Id. at 1544. "Such jurisdiction, therefore, is only

appropriate in exceptional cases where equity demands intervention." Id.

> The Court is guided by several considerations in deciding whether to exercise equitable jurisdiction: "(1) whether the government agents seized the property in callous disregard for the constitutional rights of the petitioner; (2) whether the petitioner has an individual interest in and need for the material he seeks to have returned; (3) whether the petitioner would be irreparably injured by denial of the return of the property; and (4) whether the petitioner has an adequate remedy at law."

Mesa Valderrama v. United States, 417 F.3d 1189, 1197 (11th Cir. 2005)

(quoting In re $67.470.00, 901 F.2d at 1544).

The Court has carefully reviewed all of Mr. Hartley's arguments and

finds that there are no circumstances justifying the Court's exercise of its

equitable jurisdiction or a finding that the Government has acted with

"unclean hands." The Court does not find that there is any evidence in the

record to show that the Government acted with disregard of Mr. Hartley's

constitutional rights or otherwise acted wrongfully, dishonestly,

negligently, or in bad faith. Critically, the Court also finds that Mr. Hartley

was not denied an adequate remedy of law. Mr. Hartley has not been

procedurally stifled from filing his claim for Defendant Currency or

pursuing legal relief. Mr. Hartley had actual notice of the forfeiture and

vigorously pursued legal relief and has shown no impediments to this

process other than a delay in his initial notice, which was lawfully delayed

under 18 U.S.C. § 983. Mr. Hartley has been given the opportunity to fully litigate the issue as to his entitlement to Defendant Currency.

## IV.    CONCLUSION

In light of the foregoing, Plaintiff's Motion for Summary Judgment [71] is **GRANTED**. Claimant's Motion for Summary Judgment [70] and Motion to Strike [76] are **DENIED**. The Clerk is **DIRECTED** to **CLOSE** the case.

**IT IS SO ORDERED** this 29th day August, 2023.

**Leigh Martin May**
**United States District Judge**

32